## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

DIRECTV, INC.,

           Plaintiff,

vs.                                              Civ. No. 04-0193 JH/WDS

JERRY DIMAS,

           Defendant.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on Plaintiff DIRECTV, Inc.'s ("Plaintiff" or "Plaintiff DIRECTV") First Amended Motion for Entry of Default Judgment Against Jerry Dimas ("Defendant"), filed November 10, 2004 **[Doc. No. 16]**.  The Court having considered the motion, exhibits, pleadings, affidavits, and relevant law, and being otherwise fully informed, makes the following Findings of Fact and Conclusions of Law.

### FINDINGS OF FACT

The Court makes its Findings of Fact pursuant to Federal Rule of Civil Procedure 52. "Because of the default entered against [Defendant], the Court accepts as true all of the factual allegations of the complaint, except those relating to damages." *Gervais v. O'Connell, Harris & Assocs.*, 297 F. Supp. 2d 435, 438 (D. Conn. 2003) (citation omitted).  Pursuant to this rule, the Court incorporates herein the well-pleaded factual allegations regarding liability in Plaintiff's Complaint.  In addition, based on the detailed affidavits and other documentary evidence in this case, the Court makes the following Findings of Fact with respect to damages, attorney's fees, and costs.

1.   Copies of the summons and Complaint personally were served on Defendant on March 21, 2004, at 1130 Mariano Trail, SW, Albuquerque, New Mexico.  On April 9, 2004, Defendant filed a Notice indicating that he was "responding to [the] summons" and "seeking legal advi[c]e" on the matter.  Defendant listed 1130 Mariano Trail as his address on the Notice.  Thereafter, Defendant failed to defend against the allegations in the Complaint as provided by the Federal Rules of Civil Procedure.

2.   On September 29, 2004, Plaintiff filed a Precipe asking the United States District Court Clerk to enter default against Defendant.  Plaintiff mailed a copy of the Precipe to Defendant at 1130 Mariano Trail.  On September 30, 2004, the Clerk granted Plaintiff's request. Thereafter, on November 10, 2004, Plaintiff filed and mailed to Defendant at 1130 Mariano Trail its First Amended Motion for Entry of Default Judgment Against Jerry Dimas ("Amended Motion for Default Judgment").

3.   Defendant resides in the State of New Mexico and is not an infant, incompetent person, or soldier or sailor.  *See* Aff. of A. Barraza, dated Sept. 16, 2004; Compl. ¶ 11.  The activities over which Plaintiff complains took place in the State of New Mexico.  *See id.*

4.   Plaintiff DIRECTV is a corporation incorporated under the laws of the State of California.  Plaintiff is in the business of distributing satellite television broadcasts throughout the United States.  Plaintiff has developed a satellite system capable of transmitting various digitized video and audio signals to homes and businesses nationwide.  Plaintiff relays digital signals from within the United States to satellites in space, and those signals, in turn, are broadcast back to the United States to various fixed outdoor satellite dishes designed to capture

the satellite signals.  Each fixed outdoor satellite dish is connected by cable to an indoor satellite receiver, which is then connected by cable to a television monitor.  *See id.* ¶ 2.

5.  To prevent the unauthorized reception and use of Plaintiff's satellite broadcasts, Plaintiff uses encryption technology digitally to scramble the signal rendering it unusable until it is unscrambled.  A satellite receiver is the component that makes descrambling possible.  Each satellite receiver contains a removable access card that manages the opening and closing of television channels offered by Plaintiff.  An access card holds a computer-type chip that stores and applies the information necessary to unscramble the satellite signals being received through the satellite dish.  When properly operated, Plaintiff electronically can program access cards to close or open television channels.  *See id.* ¶ 3.

6.  Once a customer pays Plaintiff a subscription fee, Plaintiff electronically directs the access card to unscramble portions of the satellite signal purchased to allow the customer to view programs on his or her television.  Through an access card, Plaintiff can provide many different levels of service to individual customers.  Customers generally pay for their services on a monthly basis.  In addition to monthly programming packages, Plaintiff sells certain satellite broadcasts on a per-show or per-package basis.  *See id.* ¶ 4.

7.  Despite the encryption technology Plaintiff uses to protect its signal, individuals and companies are marketing and using devices and equipment (including the illegal programming of valid access cards) surreptitiously to pirate Plaintiff's signals (collectively referred to as "pirate access devices").  The use of such pirate access devices commonly provides the user with access to all of Plaintiff's programming with no payment to Plaintiff.  *See id.* ¶ 5.

8.  One way Plaintiff combats the use of pirate access devices is by employing "electronic countermeasures" or "ECMs" electronically to disable the access cards that illegally have been programmed to intercept its signals.  *See* Exh. 2, ¶¶ 4-11, Mot. for Default J. (Declr. of J. Sichler).

9.  From October 1999 through February 2000, Defendant created and activated a DIRECTV account.  Defendant subscribed to DIRECTV's Select Choice package at a monthly cost of $19.99.  Defendant disconnected his account in February 2000, leaving an unpaid balance of $56.16.  By virtue of his subscription to DIRECTV, Defendant possessed the equipment necessary to receive and view some, but not all, of Plaintiff's satellite transmissions during his subscription period.  *See* Exh. 6A, Am. Mot. for Default J. (Aff. of C. Fong-Hilton and attached billing records).

10.  On or about May 25, 2001, Plaintiff executed writs of seizure at the mail shipping facility used by several major distributors of pirate access devices, including, among others, "www.whiteviper.com" ("Whiteviper").  Subsequent to the raids, Plaintiff obtained a substantial body of shipping records, e-mail communications, credit card receipts, and other records.  These records evidence Defendant's purchase of a pirate access device from Whiteviper.  *See* Compl. ¶ 7.

11.  On or about September 25, 2000, Defendant purchased from Whiteviper a "Whiteviper Unlooper with Wildthing" software.  *See* Exh. 4, Am. Mot. for Default J. (Aff. of M. Houck and attached e-mail correspondence from Defendant to Whiteviper); Compl. ¶ 15. Defendant placed the order using interstate or foreign wire facilities and received the order

through the United States Postal Service or commercial mail carrier at 1130 Mariano Trail in Albuquerque, New Mexico.  *See id.*

12.   During the time period relevant to Plaintiff's Complaint, www.whiteviper.com was an Internet website selling the Whiteviper Unlooper device.  *See* Exh. 2 at ¶ 19, Exh. List to Mot. for Default J. (Aff. of J. Sichler).  The Whiteviper Unlooper is a pirate access device designed to circumvent Plaintiff DIRECTV's conditional access controls.  This circumvention allows the user of a Whiteviper Unlooper device to view DIRECTV broadcasts without paying for them or obtaining authorization from Plaintiff.  *See* Compl. ¶ 6; Exh. 2 at ¶ 19, Exh. List to Mot. for Default J. (Aff. of J. Sichler); *id.* Exh. 3, (Aff. of B. Gatliff); *id.* Exh. 3A, pp. 1, 18-19 (Expert Rep. of B. Gatliff explaining the function of the Whiteviper Unlooper device); *id.*, Exh. 3B (Expert. Rep. of B. Gatliff explaining function of WT2 firmware).  Specifically, the Unlooper is designed to repair access cards that have been rendered unusable by illegitimate use of Plaintiff's signals and/or DIRECTV's ECMs, and is designed for use with certain software further permitting the illegal programming of valid DIRECTV access devices.  *See* Compl. ¶ 15.

13.   The Whiteviper Unlooper device has connectors for a smart card (*e.g.*, a DIRECTV access card), power, and a serial cable to the user's computer.  The Whiteviper device is rendered operational by inserting a DIRECTV access card into the device, plugging the device into the user's personal computer, and using certain software on the user's computer.  The firmware present in the Unlooper device's microcontroller, *i.e.*, the WT2 code, moves data between the user's computer and the DIRECTV access card.  *See* Exh. 3A, pp. 4-6, Exh. List to Mot. for Default J. (Expert Rep. of B. Gatliff).  The Whiteviper Unlooper device and the required

firmware effectively circumvent DIRECTV's conditional access controls and allow a user to view DIRECTV broadcasts, including pay-per-view options, at no cost to themselves. *See id.* at 18; *see also* Exh. 3B, p. 5, Exh. List to Mot. for Default J. (Expert Rep. of B. Gatliff).

14. Other than the tasks described above, *see supra* ¶ 13, no assembly or modification of any device or equipment is required to render the Whiteviper Unlooper device operational for the purpose of intercepting or receiving the television programming available through Plaintiff's satellite transmissions. *See* Exh. 3B at 4-6, Exh. List to Mot. for Default J. (Expert Rep. of B. Gatliff).

15. Defendant's purchase of the Whiteviper Unlooper device is evidence of his eagerness to accomplish satellite piracy, because the only purpose of the Whiteviper Unlooper device and WT2 firmware is to repair damage done to unauthorized access cards by Plaintiff DIRECTV's ECMs. Defendant's possession and use of the pirate access device capable of unscrambling, receiving, and exhibiting encrypted satellite programming transmissions without authorization provided him with access to all of Plaintiff DIRECTV's television and sports programming at all times. *See* Compl. ¶ 16. Defendant received this satellite programming by maintaining satellite dishes capable of receiving satellite programming on television monitors. *See id.* ¶ 17.

16. In addition to providing evidence that Defendant purchased the Whiteviper Unlooper device, Plaintiff also has provided documentary evidence obtained from a company called the Internet Crimes Group, Inc. ("ICG") indicating that Defendant was involved in satellite piracy. ICG is a computer forensics company capable of searching discussion forums on the Internet by an individual's e-mail address or username. *See* Aff. of J.J. Farino in Support of DIRECTV's

Mot. for Default J ("Aff. of J.J. Farino").  ICG provided Plaintiff with evidence, *i.e.*, posts to

Internet discussion forums, of Defendant's participation in pirating DIRECTV signals.  *See id.*,

attachments.  On August 8, 2001, in an Internet discussion forum, Defendant wrote, "I'm trying

to load my H card but it keeps saying time out reading from card but I take the card out and clean

it then try to load it again and still same problem?  Please Help!"  Eight minutes later, Defendant

wrote, "no my card is not a bs card it was working fine then it said for ordering info please call

ext 711 but still had audio and video I then took card out used my Unlooper on it then tryed [sic]

to clean but no go?"  In an August 9, 2001, discussion forum Defendant wrote, "I've unlooped

my card in Wild Thing 6 and I'm trying to program it with my programmer but it won't take no

updates or nothing."  On August 10, 2001, Defendant wrote, "Oh, I'm Bad its an H card."  Exh.

5B, at DTV 08737-38, Am. Mot. for Default J. (Defendant's discussion forum correspondence

obtained by ICG); *see also* Aff. of J.J. Farino, attachments.  Over four months later, on December

29, 2001, Defendant asked, "Can someone please send me a working script for my H card I've

been out of programming my card and I am just trying to kick back and watch a little tv."  Exh.

5A, at DTV 08724, Am. Mot. for Default J. (Defendant's discussion group correspondence

obtained by ICG); Aff. of J.J. Fariono, attachments.  Based on these posts, it is reasonable to

infer that Defendant received the pirate access device and that he used the device knowingly to

view illegal and unauthorized satellite programming.

    17.  Prior to September 25, 2000, when Defendant purchased the Whiteviper Unlooper

device, there is insufficient evidence to conclude that Defendant was engaged in satellite piracy.

This is true regardless of the fact that Defendant possessed the equipment needed to download

DIRECTV's satellite television programming as of October 1999, that Defendant purchased the most basic subscription to DIRECTV in October 1999, and that Defendant terminated his subscription with DIRECTV after only four months in February 2000.  Although the Whiteviper Unlooper device is designed to restore functionality to illegally modified DIRECTV access cards, the evidence is not sufficient to determine how long Defendant used an illegally modified DIRECTV access card prior to the time he purchased the Whiteviper Unlooper device. Defendant's use could have begun at any time between October 1999--when Defendant initiated his subscription to DIRECTV--and September 25, 2000--the day Defendant purchased the Unlooper device.  Plaintiff's allegation that Defendant actively programmed and reprogrammed DIRECTV access cards alone is not sufficient to demonstrate when Plaintiff's programming or reprogramming of the access cards began.  *See* Compl. ¶ 35.

    18.  Defendant Dimas's DIRECTV receiver utilized a "P2" card.  Plaintiff DIRECTV deactivated the P2 card in October 2002.  Defendant could not view DIRECTV satellite transmissions on his DIRECTV receiver without an active P2 card.

    19.  Because the Whiteviper Unlooper device provided Defendant with a means of accessing all of the television programming available through Plaintiff's satellite transmissions, it is reasonable to infer that Defendant's viewing habits resembled at least those of the top ten percent (10%) of DIRECTV subscribers, *i.e.*, those who purchased or subscribed to significantly more pay-per-view and "premium" channels than the average DIRECTV subscriber.  *See* Exh. 2, ¶ 14, Exh. List to Mot. for Default J. (Declr. of J. Sichler).  Indeed, it even is more likely that the user of an illegal access device would make significantly greater use of DIRECT's proprietary

programming than would the honest subscriber who pays for each channel he or she uses.  It is reasonable to infer that those who invest hundreds of dollars in illegal devices and software can be expected to view a significant amount of television programming.  *See id.*

20.  The average monthly cost of a subscription for the top ten percent (10%) of DIRECTV subscribers is $229.08.  This includes both subscription and pay-per-view charges. Assuming a user of a modified access card would view as much programming as a typical high-end paying customer, the annual value of programming viewed by such a user would be $2,748.96 (12 x $229.08).  *See id.* ¶ 15.

21.  Based on the above findings, it is reasonable to infer that Defendant unlawfully obtained approximately $229.08 worth of programming per month for a period of approximately 24 months, for a total of approximately $5,497.92 in lost subscription and pay-per-view revenues to Plaintiff.  *See id.*

22.  Based on the above findings, it is reasonable to infer that Defendant was an end-user who obtained and operated the Whiteviper Unlooper device for personal use in viewing DIRECTV programming at a family residence.

23.  It is not reasonable to infer, based on the above findings, that Defendant was a manufacturer, assembler, importer, exporter, seller, or distributor of pirate devices.  The fact that the Complaint alleges that "upon information and belief Defendant *may have been* engaged in an enterprise to distribute and/or resell the devices purchased from the Fulfillment Pirate Group" (emphasis added) or that "upon information and belief, Defendant profited from his enterprise" is not sufficient, without other supporting factual allegations or evidence, to support a reasonable

inference that Defendant did in fact manufacture, assemble, modify, import, export, sell, or distribute satellite pirate devices.

24.  Plaintiff submits the Affidavit of Mark Taylor Kennedy to provide an evidentiary basis for its request for attorney's fees.  Mr. Kennedy attests that he, or someone at his direction, performed the following tasks in this case:  reviewed the file, prepared the Complaint, contacted Defendant regarding allegations in the case and service of process, and prepared the attorney's fees and costs affidavit.  *See* Exh. 7, Am. Mot. for Default J.  Based on his review of the file, Mr. Kennedy attests that Plaintiff has incurred and been billed at least $130.86 in attorney's fees related to the prosecution of the case against Defendant and has incurred $150.00 in expenses.  In addition, Plaintiff has incurred an additional $180.00 that has not been billed.  *See id.*  Mr. Kennedy states that the fees and costs incurred to date are reasonable and necessary for the proper prosecution of this action.  *See id.*  Plaintiff has not provided a detailed itemization of the costs and attorney's fees requested in this case.

## CONCLUSIONS OF LAW

I.    <u>Jurisdiction and Venue</u>.

25.  The law in this circuit requires that "judgment by default should not be entered without a determination that the court has jurisdiction over the defendant[]."  *Dennis Barber & Assocs. v. Pack-Tech Int'l Corp.*, 115 F.3d 767, 771 (10th Cir. 1997).  Thus, before entering a default judgment "the district court has an affirmative duty to look into its jurisdiction both over the subject matter and the parties."  *Williams v. Life Savings & Loan*, 802 F.2d 1200, 1203 (10th Cir. 1994).

26. The Court has reviewed the record and is satisfied that it has jurisdiction over both the subject matter and parties in this case. Specifically, the Court has jurisdiction over Plaintiff's claims pursuant to the Cable Communications Policy Act of 1984, 47 U.S.C. §§ 521 *et seq.*, the Electronic Communications Policy Act of 1986, 18 U.S.C. §§ 2510 *et seq.*, and 28 U.S.C. Section 1331. Venue is proper under 28 U.S.C. Section 1391(b).

27. This Court also has personal jurisdiction over Defendant. Defendant properly was served with the Summons and Complaint, and Defendant is not an infant, incompetent person, or a soldier or sailor who is shielded from entry of a default judgment under these circumstances. In addition, Defendant resides in the State of New Mexico, and the activities over which Plaintiff complains took place in the State of New Mexico.

II.   Liability.

28. Federal Rule of Civil Procedure 55(a) provides, "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise, the clerk shall enter the party's default." On September 29, 2004, Plaintiff filed a Precipe indicating that Defendant did not file an answer or other pleading responsive to the Complaint. The Clerk properly entered default on September 30, 2004.

29. A plaintiff seeking to obtain a default judgment may apply to the court for such judgment pursuant to Federal Rule of Civil Procedure 55(b)(2). Although by virtue of Defendant's default the Court accepts as true all of the factual allegations of the Complaint relating to liability, *see Gervais v. O'Connell, Harris & Assocs.*, 297 F. Supp. 2d 435, 438 (D.

-11-

Conn. 2003) (citation omitted), "liability is not necessarily established merely because of the default, as a defendant cannot be said to 'admit' conclusions of law through default." *Evanauskas v. Strumpf*, No. 00-CV-1106, 2001 U.S. Dist. LEXIS 14326, *4 (D. Conn. June 27, 2001). Therefore, before judgment can be entered, the Court "must determine whether plaintiff's factual allegations are sufficient to state a claim for relief on each of the causes of action for which the plaintiff seeks judgment by default." *Id.* (citation omitted); *see also* 10 Charles A. Wright, Arthur R. Miller, & Mary K. Kane, Federal Practice and Procedure § 2688.

30. Plaintiff moves for default judgment under two statutory provisions. Specifically, Plaintiff alleges that Defendant violated (1) Section 605(e)(4) of the CCPA, 47 U.S.C. § 605(e)(4), and (2) Section 2511 of the Electronic Communications Privacy Act ("Wiretap Act"), 18 U.S.C. § 2511.[1] The Court will address both of these claims in turn.

A.    Liability Under the CCPA, 47 U.S.C. § 605(e)(4).

31. Plaintiff's Complaint alleges that Defendant violated Section 605(e)(4) of the CCPA, and in Plaintiff's Amended Motion for Default Judgment Plaintiff maintains that it is entitled to statutory damages in the amount of $10,000.00 due to Defendant's violation.

32. Section 605(e)(4) of the CCPA prohibits unauthorized persons from manufacturing, assembling, modifying, importing, exporting, selling, or distributing a device if the person has reason to know that the device primarily is intended for the type of activity prohibited by Section

---

[1] Plaintiff's Complaint also contains statutory claims under Section 605(a) of the Cable Communications Policy Act (CCPA), 47 U.S.C. § 605(a) (Count I), and Section 2512 of the Wiretap Act, 18 U.S.C. § 2512 (Count III), as well as a common law claim for civil conversion (Count V). Plaintiff voluntarily has withdrawn Counts III and V, so the Court need not address those claims herein. Although Plaintiff has not withdrawn Count I, the Court does not address the merits of that claim because Plaintiff has not moved for default judgment on the claim.

605(a), *i.e.*, unauthorized reception of Plaintiff's satellite transmissions. *See* 47 U.S.C. § 605(e)(4); *DirecTV, Inc. v. Getchel*, No. 3:03 CV 2073(GLG), 2004 WL 1202717, at *3 (D. Conn. May 26, 2004). The requirements for proving a violation of Section 605(e)(4) are strict because it "targets upstream manufacturers and distributors, not the ultimate consumer of pirating devices." *DirecTV, Inc. v. Albright*, No. Civ. A03-4303, 2003 WL 22956416, at *2 (E.D. Pa. Dec. 9, 2003); *accord Getchel*, 2004 WL 1202717, at *3; *DirecTV, Inc. v. Hussain*, No. Civ. A-03-6482, 2004 WL 1125937, at *1 (E.D. Pa. May 20, 2004); *Joe Hand Promotions, Inc. v. Hernandez*, No. 03 CV 6132(HB), 2004 WL 1488110, at *3 (S.D.N.Y. June 30, 2004). The Second Circuit has explained that Section 605(e)(4) is "the provision relating to manufacturers and sellers, *rather than users*, of cable descramblers." *Community Tel. Sys., Inc. v. Caruso*, 284 F.3d 430, 435 n.6 (2d Cir. 2002) (emphasis added).

33. The Court finds these authorities persuasive and concludes that in order to state a claim under which statutory damages can be awarded for violation of Section 605(e)(4), Plaintiff cannot rely solely on the fact or inference that Defendant purchased or installed one or more pirate access devices to receive satellite television transmission on his personal television system without proper authorization. *See Guzman*, Civ. No. 04-0350, Mem. Op. & Order (D.N.M. Aug. 31, 2004). Installing or operating a pirate access device on one's personal television system does not fall within the definition of "manufacturing," "modifying," or "assembling" a device under Section 605(e)(4). *See id.* Similarly, receiving a pirate access device through the mail does not amount to "distributing," "exporting," or "importing" a device under Section 605(e)(4). *See id.*; *see also DirecTV, Inc. v. Brasswell*, No. 4:03-CV-330-A, 2004 WL 1562964, at *2 n.3 (N.D.

-13-

Tex. July 12, 2004).

34.   Although in its Complaint Plaintiff alleges that "upon information and belief Defendant *may have been* engaged in an enterprise to distribute and/or resell the devices purchased from Whiteviper," *id.*  ¶ 18 (emphasis added), this allegation alone cannot save Plaintiff's Section 605(e)(4) claim.  Even if the Court accepts this allegation as true for purposes of Defendant's default, the allegation that "upon information and belief" Defendant "may have been engaged" in upstream manufacturing, without additional factual allegations indicating that Defendant did in fact manufacture, assemble, modify, import, export, sell, or distribute pirate access devices outside of his home, is not sufficient to state a claim for relief under Section 605(e)(4).  Plaintiff's allegation that upon information and belief Defendant profited from the enterprise that he "may have been engaged in" without additional facts indicating that he was active in the upstream market does not persuade the Court otherwise.

35.   The allegations in Plaintiff's Complaint that Defendant removed or inserted a pirate access device or that Defendant inserted an illegally programmed access card into a valid DIRECTV in order to allow him to receive Plaintiff's satellite transmissions on a single personal television system are not legally sufficient to support the conclusion that Defendant violated Section 605(e)(4).  *See* Compl. ¶ 35.  Plaintiff's Complaint therefore does not state a claim for relief for a violation of Section 605(e)(4) and the Court will not enter default judgment against Defendant on this ground.

   B.   <u>Liability Under the Wiretap Act, 18 U.S.C. § 2511</u>.

36.   Section 2511 of the Wiretap Act provides in relevant part that "any person who

intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication" shall be punished by fine or imprisonment or subject to suit by the Federal Government.  18 U.S.C. § 2511; *see also DirecTV, Inc. v. Brown*, 371 F.3d 814, 816 (11th Cir. 2004).  In addition, Section 2520(a) of the Act expressly creates a private cause of action for "'any person whose wire, oral, or electronic communication is intercepted'" in violation of Section 2511(1)(a) of the statute.  *Huynh*, 318 F. Supp. 2d at 1129 (quoting 18 U.S.C. § 2520(a)) (additional citations omitted); *accord Heggy v. Heggy*, 944 F.2d 1537, 1539-40 (10th Cir. 1991), *cert. denied*, 503 U.S. 951 (2002).

37.  Plaintiff's Complaint states a viable claim that Defendant violated Section 2511(1)(a) of the Wiretap Act.  Plaintiff has alleged facts sufficient to indicate that Defendant intentionally intercepted its satellite communications and that Plaintiff is a person whose electronic communications are being intercepted, disclosed, and/or intentionally used in violation of Section 2511.  *See* Compl. ¶¶ 27, 28.  The Court therefore will enter default judgment against Defendant on this claim.

III.    Damages.

38.  Because the Court has held that Plaintiff is entitled to a default judgment on its claim that Defendant violated Section 2511 of the Wiretap Act, the Court must determine the amount of Plaintiff's damages.  Although by virtue of Defendant's default the Court accepts as true all of the factual allegations in the Complaint relating to liability, the Court may not accept as true the allegations relating to damages.  *See Gervais v. O'Connell, Harris & Assocs.*, 297 F. Supp. 2d 435, 438 (D. Conn. 2003) (citation omitted).  The Court independently must determine that there

-15-

is a factual basis for any damages the Court awards.  *See, e.g.*, *DirecTV v. Perrier*, No. 03-CV-400S, 2004 WL 941641, at *2 (W.D.N.Y. Mar. 15, 2004); *DirecTV v. Getchel*, No. 3:03CV2073(GLG), 2004 WL 1202717, at *1 (D. Conn. 2004 May 26, 2004); *Capitol Records v. Lyons*, No. 3:03-CV-2018-L, 2004 U.S. Dist. LEXIS 14913, at *9-10 (N.D. Tex. Aug. 2, 2004); *see also James v. Frame*, 6 F.3d 307, 309-11 (5th Cir. 1993); *Adolph Coors Co. v. Movement Against Racism & Klan*, 777 F.2d 1538, 1543-44 (11th Cir. 1985).

39.  Decisions to enter judgment by default are committed to the district court's sound discretion.  *See, e.g.*, *Dennis Garberg & Assocs. v. Pack Tech Int'l Corp.*, 115 F.3d 767, 771 (10th Cir. 1997).  Under Rule 55(b)(2), "[i]f, in order to enable the court to enter judgment . . . , it is necessary to . . . determine the amount of damages . . . , the court *may* conduct such hearings or order such references as it deems necessary and proper."  Fed. R. Civ. P. 55(b)(2) (emphasis added).  A district court has discretion to determine whether to conduct a hearing.  *See id.*; *see also DirecTV, Inc. v. Huynh*, 318 F. Supp. 2d 1122, 1129 (M.D. Ala. 2004) (citation omitted).  The Tenth Circuit has held that "a court may enter a default judgment without a hearing only if the amount claimed is a liquidated sum or one capable of mathematical calculation."  *Hunt v. Inter-Globe Energy, Inc.*, 770 F.2d 145, 148 (10th Cir. 1985).

40.  Here, damages are capable of mathematical calculation.  Plaintiff has provided detailed affidavits and documentary evidence indicating the average monthly loss of $229.08 to Plaintiff as a result of Defendant's piracy.  The Court has determined that Defendant's piracy lasted approximately 24 months.  *See supra* ¶ 20, 21.  The determination of Plaintiff's actual damages can be calculated mathematically by multiplying the average monthly damages by the

number of months Defendant engaged in unlawful activity.

41.  With respect to statutory damages, Congress authorized courts to award the greater of $10,000.00 or $100.00 per day for each day of violation.  *See* 18 U.S.C. § 2520(c)(2)(B).  The amount is liquidated in this case because Plaintiff has requested $10,000.00 in statutory damages.  *See* Am. Mot. for Default J. at 9.  Even if Plaintiff had not requested statutory damages in the amount of $10,000.00, the sum of $100.00 per day for each day of violation would be capable of mathematical calculation.

42.  In addition, Plaintiff has submitted detailed affidavits and documentary evidence in support of its motion for a default judgment.  Courts overwhelmingly have recognized that a hearing to enter a default judgment and award damages is not necessary if the record contains detailed affidavits and documentary evidence establishing a basis for a damages award.  *See, e.g.*, *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997); *James*, 6 F.3d at 309-11; *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979); *Dundee Cement Co. v. Howard Pipe & Concrete Prods.*, 722 F.2d 1319, 1323 (7th Cir. 1983); *Adolph Coors*, 777 F.2d at 1543-44.[2]  Numerous courts have entered default judgments awarding damages to Plaintiff DIRECTV for violations of Section 605 of the CCPA and Section 2511 of the Wiretap Act without conducting an evidentiary hearing.  *See, e.g.*, *Perrier*, 2004 WL 941641, at *2 (citations omitted) (relying instead upon detailed affidavits); *Getchel*, 2004 WL

---

[2] *See also Wenaha Music Co. v. J & K Investments*, No. 86-4374, 1987 U.S. Dist. LEXIS 8612, at *5-6 (D. Kan. Sept. 9, 1987); *Capitol Records*, 2004 U.S. Dist. LEXIS 14913 at *9-10; *KPS & Assocs. v. Designs by FMC, Inc.*, 318 F.3d 1, 21 (1st Cir. 2003).

1202717, at *1 (same); *Huynh*, 318 F. Supp. 2d at 1129 (same).[3]

43.  In support of its motion and amended motion for default judgment, Plaintiff has submitted the following exhibits:  (1) summons and return of service, (2) notarized Declaration of Jaime Sichler Supporting Default Against Jerry Dimas establishing Plaintiff's actual damages caused by Defendant's unlawful conduct, (3) Declaration of Bill Gatliff and attached Expert Reports providing evidence of Defendant's liability, (4) Affidavit of Michael E. Houck and attached e-mail correspondence indicating that Defendant purchased a Whiteviper Unlooper with Wildthing from Whiteviper, (5) Affidavit of Joseph J. Farino in Support of DIRECTV'S Motion for Default Judgment, (6) Internet Crime Group summary documents indicating Defendant's participation in Internet discussion forums and piracy of DIRECTV signals, and (7) Affidavit of Carol Fong-Hilton and attached DIRECTV account information evidencing Defendant's procurement of equipment necessary to download DIRECTV's satellite television programming. *See* Exh. List to Mot. for Default J.; Exhs. to Am. Mot. for Default J; Aff. of J.J. Farino.  These documents establish a sufficient evidentiary basis for the Court's entry of default judgment and award of damages.  They also establish that Plaintiff's actual damages are subject to mathematical computation.  Plaintiff has not requested a hearing on its motion for default judgment, and the Court does not believe that additional, non-duplicative evidence would be

---

[3] *See also DirecTV, Inc. v. Diane Haralson*, No. CIV-04-0543 BB/RHS, Default Judgment (D.N.M. Oct. 13, 2004); *DirecTV, Inc. v. Trujillo*, No. CIV-04-0187 JB/ACT, Default Judgment (D.N.M. July 29, 2004); *DirecTV, Inc. v. Orosco*, No. CIV-04-0542 JB/LCS, Default Judgment (D.N.M. July 26, 2004); *DirecTV, Inc. v. Aragon*, No. CIV-04-0089 RB/WDS, Default Judgment (D.N.M. July 27, 2004); *DirecTV, Inc. v. Hollins*, No. CIV-04-0091 JP/RLP, Default Judgment (D.N.M. Apr. 9, 2004).  *But see DirecTV, Inc. v. Guzman*, No. CIV-04-0350 MCA/RHS, Memorandum Opinion and Order (D.N.M. Aug. 31, 2004).

produced at a hearing on this matter.  Judgment by default therefore is appropriate based on the evidence contained in the record to date.

44.  The Wiretap Act authorizes courts to assess as damages for violations of its provisions, including a violation of Section 2511, "whichever is the greater of--(A) the sum of the actual damages suffered by the plaintiff and any profits made by the violator as a result of the violation; or (B) statutory damages of whichever is the greater of $100 a day for each day of violation or $10,000."  18 U.S.C. § 2520(c)(2).

45.  To determine whether actual or statutory damages are greater in this case, the Court first will determine Plaintiff's actual damages.  As described herein, the determination of Plaintiff's actual damages can be calculated mathematically by multiplying the average monthly damages by the number of months Defendant engaged in unlawful activity.  The Court found that it is reasonable to infer that Defendant unlawfully obtained approximately $229.08 worth of programming per month for a period of approximately 24 months, for a total of approximately $5,497.92 in lost subscription and pay-per-view revenues to Plaintiff.  Plaintiff's actual damages therefore are $5,497.92.

46.  With respect to statutory damages, the Court has discretion to award the full amount of statutory damages authorized under Section 2520(c)(2), or no damages at all.  *See, e.g.*, *DirecTV, Inc. v. Brown*, 371 F.3d 814, 817-19 (11th Cir. 2004) (agreeing with the Fourth, Sixth, and Eight Circuits that the decision to award damages under Section 2520(c)(2) is discretionary); *see also DirecTV, Inc. v. Griffin*, 290 F. Supp. 2d 1340, 1347 n.28 (M.D. Fla. 2003).  Congress did not grant district courts authority to prescribe an amount falling between these two choices.

-19-

*See, e.g.*, *id.* (citing *Reynolds v. Spears*, 93 F.3d 428, 435 (8th Cir. 1996)) (additional citations omitted).

47.  In cases such as this one where the defendant's violation was de minimis--*i.e.*, the defendant obtained DIRECTV's programming for private viewing at his home--and where Plaintiff fully can be compensated by an award of actual damages under Section 2520(c)(2), the award of statutory damages under the Wiretap Act "could easily be viewed as gratuitous." *Brown*, 371 F.3d at 819.  In addition, such an award could "'bring financial ruin to persons of modest means, even in cases of trivial transgressions.'"  *Id.* at 818 (quoting *Reynolds*, 93 F.3d at 435) (additional citation omitted).  For these reasons, many courts have declined to award any statutory damages for violations of Section 2511(1)(a) of the Wiretap Act.  *See, e.g.*, *Huynh*, 318 F. Supp. 2d at 1132; *DirecTV, Inc. v. Kaas*, 294 F. Supp. 2d 1044, 1049 (N.D. Iowa 2003); *Getchel*, 2004 WL 1202717, at *1 n.1; *Perrier*, 2004 WL 941641, at *4.  The Court finds these authorities persuasive and declines to award any statutory damages to Plaintiff for Defendant's violation of Section 2511.

48.  Because Plaintiff's actual damages exceed its statutory damages, Plaintiff is entitled to an award of its actual damages under Section 2520(c)(2) in the amount of $5,497.92.

49.  The Wiretap Act also authorizes as damages an award of attorney's fees and costs. *See* 18 U.S.C. § 2520(b)(3) ("In an action under this section, appropriate relief includes . . . a reasonable attorney's fee and other litigation costs reasonably incurred.").  Plaintiff seeks $310.86 in attorney's fees and $150.00 in costs.

50.  "The most useful starting point for determining the amount of a reasonable fee is the

number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."

*Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  The multiplication of the reasonable number of

hours expended by the reasonable hourly rate is referred to as the "lodestar" method.  *See*

*Robinson v. City of Edmond*, 160 F.3d 1275, 1281 (10th Cir. 1998).

      51.  Plaintiff has not provided a detailed itemization of the attorney hours spent or the

attorney billing rates in this case.  Accordingly, the Court cannot make an independent

determination under the lodestar method whether the attorney's fees requested are reasonable.

The Court therefore declines to award Plaintiff the attorney's fee requested.  Plaintiff also has

failed to provide the Court with a detailed itemization of its costs.  The Court therefore also

declines to award Plaintiff the costs requested.

## CONCLUSION

      For the foregoing reasons, **IT THEREFORE IS ORDERED** that Plaintiff's First

Amended Motion for Entry of Default Judgment Against Jerry Dimas, filed November 10, 2004

**[Doc. No. 16]** is **GRANTED IN PART** and **DENIED IN PART** as follows:

      a.     Partial default judgment shall be entered against Defendant Jerry Dimas in the

sum of $5,497.92, plus post-judgment interest as allowed by law to accrue thereon from the date

of judgment forward until paid;

      b.     In support of its claim for attorney's fees and costs, Plaintiff shall be granted leave

to file affidavits and other documentation identifying with specificity the number of hours billed,

the nature of each task for which the hours were billed, the attorney billing the hours, the

attorney's billing rate, and the specific costs incurred in this litigation, provided that Plaintiff

files that documentation within ten (10) days from the date of this Order; if the Court does not

receive any such documentation within ten (10) days, the Court will enter a partial judgment

consistent with this Memorandum Opinion and Order at that time; and

       c.     The Court will not enter a final judgment in this case because Count I of

Plaintiff's Complaint (*i.e.*, the claim under 47 U.S.C. § 605(a) of the Cable Communications

Policy Act) is still pending before this Court.


Dated this 9th day of February 2005.


                            JUDITH C. HERRERA
                            UNITED STATES DISTRICT JUDGE


Attorneys for Plaintiff:

       William C. Scott, Esq.
       Stan N. Harris, Esq.
       Anna E. Tuttle, Esq.

Attorney(s) for Defendant:

       N/A